## Thomas M. Green *vs.* John T. Ford.

### *Appeal—Weight of Evidence to be determined by the Jury.*

No appeal lies from a refusal of the Court to permit a witness to be re-called, after the testimony has been closed, for the purpose of stating what his testimony was.

Where in an action to recover for goods sold and delivered, the question was whether the defendant was the original debtor, and as such responsible for the payment of the goods as furnished upon his credit, or had merely undertaken to pay the debt of other parties in the event of their failure to do so, and the evidence offered to show that the defendant was liable as the principal debtor, was not of so light and insufficient a character, as to preclude a rational conclusion therefrom by the jury, it should have been submitted to their consideration.

APPEAL from the Baltimore City Court.

This was an action of *assumpsit* brought by the appellant against the appellee and Edward O. Sandford and Charles Flinders, as co-partners, to recover the sum of $455.94, for groceries and other goods sold by the appellant, and delivered to the "New Place," a restaurant in the city of Baltimore, between the 15th of November, 1867, and the 22d of June, 1868.

The pleas were the general issue.

*Exception*—At the trial below, after the testimony on both sides, a summary of which is given in the opinion of this Court, was closed, the declaration by leave of the Court was amended by striking out the names of Sandford and Flinders as defendants, and the pleas of the defendant Ford were likewise amended so as to be applicable to the amended declaration.

The plaintiff asked the Court to instruct the jury as follows:

If the jury shall find from the evidence that the defendant held himself out, or permitted himself to be regarded as the

real party in interest in the ownership of the restaurant called the "New Place," and that relying upon such representation or appearance, the plaintiff furnished the goods mentioned in the bill offered in evidence, at the prices therein mentioned, to the "New Place," their verdict must be for the plaintiff.

The defendant offered the following prayers:

1st. That there is no evidence in the cause to connect the defendant Ford as a partner of his co-defendants in this case, and the jury must therefore render their verdict for the defendant. (The pleadings having been amended, this prayer was withdrawn as unnecessary.)

2d. That the agreement on the part of the defendant to pay the plaintiff's bill, as testified to by him, not being in writing, cannot be considered by the jury.

The Court, (SCOTT, C. J.,) in delivering its opinion, stated that the plaintiff had testified that the defendant promised "to pay his debt if Flinders and Sandford did not pay it;" whereupon the counsel for the plaintiff submitted that the Court was in error, and had misunderstood the plaintiff's testimony, and desired to have him recalled for the purpose of stating what his testimony had been; but the Court refused to permit this to be done. To this refusal the plaintiff excepted.

Upon this statement of the testimony, the Court rejected the plaintiff's prayer and granted the second prayer of the defendant, and also verbally instructed the jury that there was no evidence in the case to bind the defendant as the principal debtor, and their verdict must accordingly be for the defendant.

To the rejecting of the plaintiff's prayer, the granting of the defendant's second prayer and to the verbal instructions to the jury, the plaintiff excepted, and the verdict and judgment being against him he appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, ALVEY and ROBINSON, J.

*Rufus W. Applegarth,* for the appellant.

Upon the testimony given on behalf of the plaintiff, the Court was in error in rejecting his prayer and instructing the jury that there was no evidence in the case to bind the defendant as principal debtor. On the contrary, the plaintiff's prayer should have been granted, leaving it to the jury to consider the facts offered in evidence, and to determine therefrom whether the defendant was so responsible. *Caton vs. Shaw,* 2 *H. & G.,* 14; *Ferguson vs. Tucker,* 2 *H. & G.,* 183; *Gray vs. Crook,* 12 *G. & J.,* 236; *Cole vs. Hebb,* 7 *G. & J.,* 39, 40; *Maltby vs. The N. W. Va. R. R. Co.,* 16 *Md.,* 422; *Morrison vs. Whiteside,* 17 *Md.,* 452; *Fulton vs. McCracken,* 18 *Md.,* 528; *Myer and Ewaldt vs. Grafflin,* 31 *Md.,* 350.

The Court erred in granting the prayer of the defendant, as it was not claimed that his responsibility was that of a guarantor or surety, and the tendency of the instruction was therefore, to mislead the jury. *Hurn's Lessee vs. Soper,* 6 *H. & J.,* 276; *Coale vs. Harrington,* 7 *H. & J.,* 147.

The Court was also in error in its refusal to recall the witness Green, for the purpose of re-stating his testimony, it being suggested that the Court was mistaken in its statement thereof.

*T. W. Blakistone,* for the appellee.

There was no evidence in the cause tending to prove that the appellant sold the goods, for which the suit was brought, to the appellee, or to any one by him authorized, as his agent, to purchase them and bind him therefor. The Court, therefore, properly rejected the plaintiff's prayer, and gave the verbal instruction to the jury.

Courts may, with propriety, be called upon to give an instruction as to the insufficiency of evidence, and will do so when there is no proof offered from which a reasonable mind may infer the existence of a fact necessary to be established in support of the issue joined. And where the evidence is so loose and inconclusive that the jury, instead of making legiti-

mate and reasonable inferences, would be indulging in conjecture and speculation were they to find from it the fact sought to be established—the Court may instruct them that there is no evidence of such fact. *Sheppard vs. Jones*, 28 *Md.*, 634; *The Spring Garden Mutual Ins. Co. vs. Evans*, 9 *Md*, 1.

The prayer of the plaintiff was properly rejected, because there was no proof to sustain the hypothesis of it. *Hamilton vs. State, use of Hardesty*, 32 *Md.*, 348; *Cumberland Coal and Iron Co. vs. Scally*, 27 *Md.*, 601.

The promise of the defendant to pay if Sandford and Flinders did not, shows that the plaintiff regarded the debt as that of Sandford and Flinders. A promise by the defendant, under such circumstances, would be a promise to pay the debt of another, within the Statute of Frauds. If he were not liable without such promise there was no consideration for the assumption of such a liability, and the defendant's second prayer was properly granted.

It is entirely within the discretion of the Court to recall a witness or not, after the testimony has closed, and no appeal will lie from a refusal so to do.

STEWART, J., delivered the opinion of the Court.

In this case the appellant excepts to the rejection by the Court below of the prayer offered by him; also to the granting of the appellee's second prayer; to the verbal instructions of the Court, that there was no evidence in the case to bind the appellee as a principal, and that the verdict must accordingly be for the defendant; also to the refusal of the Court to permit a witness to be re-called for the purpose of stating what his testimony had been.

There was no dispute as to the sale of the goods by the appellant, and their delivery at the restaurant described as the "*New Place*," belonging to the appellee.

The question to be determined was, whether the appellee was in truth the original debtor, and as such responsible for the payment of the bill as furnished upon his credit, or had

he merely collaterally undertaken to pay the debt of other parties in the event of their failure to pay.

Considerable testimony to sustain the appellant's theory of the case, that the goods were furnished upon the credit of the appellee, had been offered to the jury, and the evidence of the appellee was introduced to support his defence.

The following is a summary of the same:

The appellant himself stated that he delivered the goods charged, at the New Place; that the appellee promised that the bill should be paid; that he had sold the goods to one Flinders, who was then in the place in some capacity; that it was his impression that the appellee was the owner of the establishment; that he would not have sold the goods to Flinders and Sandford alone.

Medinger, another witness, testified that he sold goods to the same restaurant upon the credit of the appellee.

John A. Good, another witness, states it was hard to tell who was the proprietor of the restaurant.

Charles E. Flinders, another witness, testifies that he had charge of the New Place sometime in 1867, and left in 1869, (during which time the bill of the appellee was furnished to the place;) that he was at the same time in the employ of the appellee as barkeeper at the Holliday Street Theatre; that he had charge of the "New Place" under an arrangement with the appellee and on his invitation; that the appellee told him he did not want him to take charge of the entire establishment, but only of the bar; that one Sandford had charge of the eating department; that he paid no rent for the place; that he gave some $2,800 received from the business to Sandford, at the request of the appellee; that all he got out of the place was his board; that he received a salary of $20 per week from the appellee for his services as barkeeper at Holliday Street Theatre, but that he never received any salary from the New Place; that he bought all the goods for the Theatre bar and also for the New Place.

The appellee, testifying in his own behalf, stated that he was the owner of the building in which the "New Place"

was kept; that he spoke to Sandford and Flinders about taking the place, and told them he would not take any rent until he could see what they would be able to pay; that they conducted the business with ill-success; that he had promised to pay some of the bills incurred by Sandford and Flinders, and did pay all such bills by special arrangement with the creditors so paid; that he never shared any of the profits of the concern; that he had seen the plaintiff almost daily, and he had never spoken to him concerning his bill; that the plaintiff never asked him concerning his responsibility before the bill was incurred.

From the tenor of the evidence we think the appellant ought not to have been denied the right to have it weighed and considered by the jury, without undertaking upon our part to say what might be the effect upon their minds.

Unless the evidence had been so slight and inconclusive as to preclude the jury from forming any rational conclusion therefrom, and we do not esteem it of such character, it ought to have been submitted to them.

However unsatisfactory it may have appeared to the mind of the Court, yet if the jury could reasonably have reached a different conclusion, it should have been considered by them. Whilst it is the prerogative of the Court to decide upon the competency and admissibility of evidence, it is the province of the jury to determine its weight and credibility. The Court should not take the case from the consideration of the jury, unless the evidence is so trivial as to admit of no rational conclusion therefrom, applicable to the issue before them.

Unquestionably there was uncertainty as to what party, under the circumstances testified to, was responsible for the goods furnished the "New Place," but if the jury, from the facts in evidence, had found a verdict for the appellant in the absence of the instructions of the Court, there would have been no valid ground for setting the verdict aside and to have granted a new trial upon motion therefor, because there had been no sufficient evidence to warrant it.

Green *vs.* Ford.

If the Court would have refused a new trial under such circumstances, it ought not to take the case from the consideration of the jury, upon the ground that no sufficient evidence had been introduced.

"The Court never withdraw the testimony from the consideration of the jury but where they would set aside any verdict founded upon its assumed sufficiency." *Cole vs. Hebb*, 7 *G. & J.*, 41.

We think the verbal instructions of the Court below, "that there was no evidence in the case to bind the defendant Ford, as a principal debtor, and that their verdict must be for the defendant, should not have been given.

The prayer of the appellant was properly refused. It is too indefinite in its terms, and states too broadly the grounds upon which the legal liability of a party arises in a case like the present.

The agreement of the appellee to pay the bill of the appellant, as testified to by him, referred to in the appellee's second prayer, might, in the minds of the jury, have afforded an inference as to the appellee's liability as the original debtor.

It was the province of the jury to interpret its tendency, and if they considered it as applicable to an original liability of the appellee, it was admissible in evidence for that purpose. If, on the contrary, the jury considered the promise of the appellee as made to pay the debt of another party, in order to bind him by such promise, it was necessary it should have been in writing. Therefore this second prayer as presented, in which the Court decided as to the effect of the agreement, ought not to have been granted.

The exception to the refusal of the Court to re-call the witness for the purpose of stating what his testimony was, if it had been taken in due form, is not the subject of an appeal, but is a matter to be determined by the sound discretion of the Court below.

*Judgment reversed and*
*new trial ordered.*

(Decided 16th January, 1872.)